IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Zeller,                                :
               Petitioner            :
                                              :
            v.                    :   No. 463 C.D. 2024
                                              :
City of Philadelphia (Workers'     :   Submitted: February 4, 2025
Compensation Appeal Board),       :
             Respondent          :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


*__OPINION NOT REPORTED__*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH              FILED: March 11, 2025

       William Zeller (Claimant) petitions for review of the April 5, 2024 order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of the Workers' Compensation Judge (WCJ) denying his Petition to Reinstate Compensation Benefits (Reinstatement Petition) and Penalty Petition filed under the Workers' Compensation Act[1] for injuries he sustained as a result of contracting COVID-19 in March of 2021.  After careful review, we affirm.

## I. __Background__

       The relevant facts and procedural history of this case are as follows.  Claimant has been employed by the City of Philadelphia (Employer) as a police officer for approximately 18 years.  He was diagnosed with COVID-19 in March of 2021 and

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710 (the Act).

he has not returned to work since that time. Employer designated Claimant's first ten months out of work in its payroll system as "E-Time" and he received full pay without depleting his sick or vacation time.[2] In January of 2022 Employer notified Claimant that if he remained out of work for an additional 60 days, he would need to use his sick and vacation time, which Claimant began using in March of 2022.

On January 25, 2022, Employer issued a Notice of Workers' Compensation Denial (NCD) denying liability for Claimant's March 5, 2021 diagnosis of COVID-19 on the basis that there was no medical evidence supporting a work related exposure. Employer acknowledged in the NCD that Claimant gave notice of his COVID-19 diagnosis in March 2021, but denied that his alleged injury was work related.

On March 2, 2022, Claimant filed Reinstatement and Penalty[3] Petitions alleging that Employer unilaterally terminated benefits in January 2022 after it had accepted the claim for COVID-19 by paying him wages in lieu of benefits. Employer filed an answer to the petitions denying all allegations and averring that because it never accepted an injury, no benefits can be reinstated.

The WCJ held a hearing on April 28, 2022 at which Claimant testified that in March of 2021 he was assigned to the Center City district and his daily duties included interacting with homeless people and assisting with prisoner transport.

---

[2] The record reflects that "E-Time" is excused time from work that enables employees to receive their salary and accrue benefits without depleting personal leave time. (Reproduced Record (R.R.) at 5a.)

[3] *See* Section 435(d) of the Act *as amended*, added by Section 3 of the Act of February 8, 1972, P.L. 25, 77 P.S. § 991(d) (relating to penalties and stating: "The [Department of Labor and Industry], the [B]oard, or any court which may hear any proceedings brought under this [A]ct shall have the power to impose penalties as provided herein for violations of the provisions of this [A]ct or such rules and regulations or rules of procedure[.]")

2

Claimant relayed that he often came into contact with members of the general public who were not wearing masks and he regularly conducted retail theft checks in drug stores where customers were ill and coughing. (R.R. at 175a-78a.)

Claimant explained that he resided with his wife and his teenaged stepson and that no member of his household had contracted COVID-19 before he was diagnosed with the virus. (R.R. at 178a.) Claimant testified that he first experienced symptoms including a high fever on March 3, 2021 and that he was diagnosed with COVID-19 two days later through a test at a drugstore. Claimant's stepson contracted COVID-19 approximately one week later. Claimant relayed that although Employer had taken precautions to clean its buildings to prevent infection, several officers had been diagnosed with COVID-19 before he contracted it. (R.R. at 180a-81a.) Claimant testified that he informed his supervisor that he was experiencing symptoms of COVID-19, that he had scheduled a test, and that he "had gotten sick at work." (R.R. at 182a.) Claimant's supervisor advised him that, per Employer's policy with respect to COVID-19, he would be paid under the "E-Time" designation. Claimant testified that he has not returned to work because he continues to experience issues with shortness of breath and exhaustion, even when he performs simple tasks such as walking between rooms. Claimant additionally testified that he had not experienced any of these health problems prior to contracting COVID-19.

Employer presented the deposition testimony of Barry Scott, its Deputy Finance Director for Risk Management responsible for administering its employee disability program, including work-related injury and illness benefits. Mr. Scott explained that when a police officer believes that he has suffered a work-related injury for which he seeks workers' compensation (WC) benefits, the standard procedure is to report the injury to his supervisor and document it using a "City of Philadelphia

3

Accident, Injury [and] Illness Form, which goes by the name of COPA II" (COPA II). (R.R. at 4a.) After an officer makes this report, Employer and a third-party administrator investigate the claim in order to make a compensability determination. Employer then sends the officer a notification letter advising whether the claim has been accepted or denied, and any benefit he will receive, or of the right to appeal the determination.

With respect to COVID-19, Mr. Scott indicated that any work-related claims were handled through the standard COPA II vetting process to determine compensability. Mr. Scott testified that from Employer's perspective, the payment of E-Time was not intended to constitute an acknowledgment that a police officer had contracted COVID-19 at work and that it was instead "meant to signify that [Employer] was not trying to punish these officers[.] . . . [We had] a situation which we were not expecting but we were looking to have a situation where [] folks . . . weren't financially penalized by the condition." (R.R. at 5a.) Mr. Scott explained that E-Time is not sick time and that if a police officer had filed a COPA II form and it was determined that he had contracted COVID-19 at work, the officer would be placed in an employee disability program and would not be paid through E-Time.

Employer also presented the deposition testimony of Lieutenant (Lt.) Donald Lowenthal, its infection control officer who handled issues associated with COVID-19. (R.R. at 28a.) Lt. Lowenthal explained that Employer's payroll system designates whether an employee is actively working or using personal time, and that an employee diagnosed with COVID-19 would be designated as using E-Time irrespective of whether the virus was contracted through work-related exposure. Lt. Lowenthal averred that he never precluded any supervisor from filling out documents related to on-duty benefits if an employee reported contracting COVID-19 at work. He

4

also testified that Employer's written guidelines for supervisors from March 2020 forward contained no restrictions on filing COPA II forms with respect to COVID-19. (R.R. at 30a.)

By decision and order circulated February 17, 2023, the WCJ denied Claimant's petitions. In doing so the WCJ made the following findings of fact and conclusions of law:

> 9. This Judge has reviewed and considered the entire testimony of Claimant. Claimant is credible as to his job duties including his interactions with the general public on a daily basis in March 2021. He is also persuasive that he was told by his supervisor that everyone in his department who missed time from work due to Covid was placed on E-Time. However, his testimony does not support the finding that he specifically told any supervisor that he contracted Covid as a result of his job duties and that he was making a claim for WC benefits. He was aware of the process for reporting a work-related injury and acknowledged that he never made a claim for [Injury on Duty (IOD)] benefits of any sort because he did not initiate the process for obtaining [the] same.

> 10. This Judge has reviewed and considered the entire deposition of Mr. Scott and finds him to be credible. Mr. Scott persuasively explained that E-Time was offered to all of [Employer's] employees who missed time from work during the Covid pandemic for one of three reasons: because of the stay-at-home order; because of quarantine after exposure to the Covid-19 virus; and, after diagnosis with Covid-19. Therefore, E-Time was available to all city employees, without consideration of where exposure to the virus occurred. He further persuasively testified that if an employee believed that he or she developed Covid-19 due to workplace exposure to the virus, that employee had to initiate the process of filing for IOD benefits.

5

11. This Judge has reviewed and considered the entire deposition of Lt. Lowenthal and finds him to be credible.

12. This Judge finds that Claimant's E-Time benefits were not wages in lieu of compensation as Claimant did not provide notice to [Employer] within 120 days of contracting Covid in March 2021 that he believed he developed Covid at work and he did not request compensation for an alleged work-related injury. Furthermore, the E-Time benefits were paid to all of [Employer's] employees out of work due to Covid whether the condition was work-related or not.

13. This Judge finds that Claimant's Covid diagnosis is not work-related, as he did not submit any medical evidence to show that his Covid condition from March 2021 and ongoing and his absence from work was causally connected to his work duties including his exposure to the public while performing his job duties as a policeman for [Employer].

14. This Judge finds that Claimant has failed to show that [Employer] violated the terms of the Act by failing to "reinstate" indemnity benefits since he never received such benefits for a work-related injury.

. . . .

2. Claimant has failed to show through substantial, competent medical evidence that as of March 21, 2021, or any other date, his Covid illness was causally related to his work duties for [Employer] that required medical treatment or resulted in a loss of earning power. *See, Rife vs. Workers' Compensation Appeal Board (Whitetail Ski Co.)*, 812 A.2d 750 (Pa. Cmwlth. 2002) (where there is no obvious causal connection between a Claimant's injury and the alleged work-related cause, unequivocal medical evidence is necessary to establish that connection).

3. Claimant has failed to show through substantial, competent evidence that the E-Time benefits paid by [Employer] for employees out due to Covid were wages in

lieu of compensation to support a reinstatement of [WC] indemnity benefits.

(WCJ Decision, 2/17/23, at 6-7.)

Claimant appealed to the Board, which affirmed the WCJ's decision by opinion and order entered April 5, 2024. The Board concluded:

> [T]he [WCJ's] finding that "Claimant's E-Time benefits were not wages in lieu of compensation" as "the E-Time benefits were paid to all of [Employer's] employees out of work due to Covid whether the condition was work-related or not[]" was supported by the credited testimony of Mr. Scott and Lieutenant Lowenthal. Mr. Scott indicated in his testimony that [Employer's] Risk Management did not intend for the payment of E-Time to constitute an acknowledgment that a police officer contracted Covid at work. Rather, he explained that the purpose of E-status in this circumstance was to serve as an administrative E-Timekeeping category that was not conditioned on disability. E-Time was to remove an exposed officer to prevent the spread of the disease among the work population and the community. Lieutenant Lowenthal indicated in his testimony that an employee that was not working because that employee reported that they had Covid-19 was recorded as out on E or administrative E-Time, irrespective of whether the reported exposure was deemed to be work-related.

> Although Claimant disagrees with the WCJ's credibility determinations as to this testimony, the Board may not disturb the WCJ's findings if they are supported by substantial, competent evidence. Because the WCJ found, based on the totality of substantial, competent evidence, that "Claimant's E-Time benefits were not wages in lieu of compensation[,]" we will not disturb this finding on appeal. . . . .

> It is important to note that, although Claimant makes these arguments in the context of a Reinstatement Petition, a claimant must first establish a work injury supporting an

7

award of benefits under the Act in order to have those benefits later reinstated. Here, there is nothing to reinstate as liability for Claimant's reported Covid-19 diagnosis had never been accepted by [Employer] or adjudicated as a work injury by a WCJ.

(Board Op., 4/05/24, at 8-9, 12-13) (citations omitted.) This appeal followed.[4]

## II. Analysis

On appeal, Claimant challenges the dismissal of his Reinstatement Petition where Employer's intent in paying E-Time was to pay wages in lieu of compensation to employees who were out of work after reporting a work injury. Claimant maintains that under the Act, Employer was required to issue a notice of compensation payable or NCD within 21 days after he informed his supervisor of his belief that he had contracted COVID-19 at work.[5] According to Claimant, the WCJ's decision is at odds with the humanitarian purposes of the Act and that because Employer unilaterally discontinued paying benefits without following statutory procedure, it must be assessed a penalty. (Claimant's Br. at 5, 17-35.)

We begin by noting that "[p]ayments in lieu of compensation are any voluntary or informal compensation, apart from the Act, paid with the intent to compensate for a work-related injury." *Kelly v. Workmen's Compensation Appeal*

---

[4] "Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, and whether constitutional rights were violated." *McDermott v. Workers' Compensation Appeal Board (Brand Industrial Services, Inc.)*, 204 A.3d 549, 554 n.9 (Pa. Cmwlth. 2019).

[5] *See* Section 406.1 of the Act *as amended*, added by Section 3 of the Act of February 8, 1972, P.L. 25, 77 P.S. § 717.1(a) ("The employer and insurer shall promptly investigate each injury reported or known to the employer and shall proceed promptly to commence the payment of compensation due either pursuant to an agreement upon the compensation payable or a notice of compensation payable [] or pursuant to a notice of temporary compensation payable[.] The first installment of compensation shall be paid not later than the twenty-first day after the employer has notice or knowledge of the employe's disability.")

8

*Board (DePalma Roofing)*, 669 A.2d 1023, 1026 (Pa. Cmwlth. 1995). "It is the **intent** of the payment, not the receipt thereof, which is relevant." *Id.* (emphasis original). Our caselaw has emphasized that the critical legal element when assessing whether an employer has paid wages in lieu of WC benefits to an employee is whether the employer's intent in making the payments was to compensate the employee for a work-related injury. *Findlay Township v. Workers' Compensation Appeal Board (Phillis)*, 996 A.2d 1111, 1118 (Pa. Cmwlth. 2010).

Instantly, Claimant relies on this Court's decision in *Kelly*, 669 A.2d 1023, to support his claim that Employer paid him wages in lieu of compensation by paying him through the E-Time designation. (Claimant's Br. at 24-25.) In *Kelly*, the claimant worked for a roofing company and was brutally assaulted at work. The company's owner told the claimant that he felt responsible for the assault and believed that another employee was the assailant. The employer thereafter paid the claimant's mortgage for six months and paid his wife $300.00 per week for an unspecified period of time. *Id.* at 1024-25. The claimant filed two claim petitions seeking benefits under the Act, which the employer challenged on the basis that the injury did not occur in the course of his employment. *Id.* at 1025. The WCJ found that the claimant had sustained a work-related injury and the payments the employer made to him were wages in lieu of WC benefits.

On appeal, this Court upheld the finding that the employer made cash payments with the intent to compensate the claimant for a work-related injury and that these payments qualified as compensation in lieu of WC benefits. *Id.* at 1026. We also determined that "by publicly expressing [its] belief that a co-employee was responsible for [the] [c]laimant's injuries and promptly beginning the weekly cash payments in lieu

9

of [WC] benefits, the [e]mployer effectively admitted liability under the Act, making any subsequent challenge to that liability unreasonable." *Id.*

Here, unlike in *Kelly*, the record reflects that Employer did not intend its payments to Claimant under the E-Time designation, which was applicable to all employees who were diagnosed with COVID-19, to replace WC benefits for a work-related injury. Instead, Mr. Scott credibly testified that any work-related COVID-19 claims Employer received were handled through the standard COPA II vetting process to determine compensability for the claim. Mr. Scott also unequivocally averred that Employer's payment of E-Time was never an acknowledgment of a police officer's contraction of COVID-19 at work, and that it was instead paid to officers to ensure that, given the unexpected circumstances of the pandemic, they "weren't financially penalized by the condition." (R.R. at 5a.) Likewise, Lt. Lowenthal testified that Employer's policies placed no restrictions on any employee or supervisor filing the standard work injury COPA II form when an injury was attributable to contraction of COVID-19. (R.R. at 30a.) Thus, the facts of this case are readily distinguishable from those of *Kelly*, wherein the employer immediately accepted responsibility for the claimant's injury, admitted that it was work related, and made cash payments to the claimant and his family.

While Claimant points to his own testimony that he notified his supervisor of his belief that he contracted COVID-19 at work, his statement was not corroborated by any supporting testimony or documentary evidence. The WCJ considered Claimant's testimony in the context of the record and ultimately rejected it as not credible. As the Board noted, it is well settled that "the WCJ is the ultimate fact finder and we cannot reweigh the evidence or disturb his [] credibility determinations." *VNA*

10

*of St. Luke's Home Health/Hospice, Inc. v. Ortiz*, 319 A.3d 644, 652 (Pa. Cmwlth. 2024).

With respect to Claimant's contention that the WCJ's decision ignores the humanitarian purposes of the Act, we disagree. While we are mindful that the Act must be liberally construed to effectuate its humanitarian purpose, *id.* at 650, this overarching general principle does not translate into an automatic credibility determination in favor of Claimant.

Lastly, regarding Claimant's assertion that Employer must be assessed a penalty because of its unilateral discontinuation of wages in lieu of WC benefits, we are mindful that an employer may not stop paying WC benefits "absent a legally recognized event relieving it of its responsibility." *Findlay Township*, 996 A.2d at 1117. Such events include executing a supplemental agreement of final receipt and obtaining a decision from WC authorities or a court suspending or terminating benefits. *Id.* Additionally, "any entity, such as the Board, which has the authority to hear any proceeding under the Act, has the power to impose penalties if a violation of the Act is proven." *Frompovicz v. Workmen's Compensation Appeal Board (Palsgrove)*, 642 A.2d 638, 641 (Pa. Cmwlth.1994) (citing 77 P.S. § 991(d)).

Here, however, as previously discussed, the record establishes Employer **never paid** Claimant wages in lieu of WC benefits by placing him on E-Time status. Thus, the penalty provisions of the Act do not apply given the circumstances of this case.

For these reasons, we conclude that Claimant's Reinstatement and Penalty Petitions were properly denied. Accordingly, we affirm the order of the Board.

_____
PATRICIA A. McCULLOUGH, Judge


Judge Dumas did not participate in the decision for this case.

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Zeller,                              :
              Petitioner         :
                                  :
        v.                  :          No. 463 C.D. 2024
                                  :
City of Philadelphia (Workers'               :
Compensation Appeal Board),                  :
              Respondent          :

## *ORDER*

AND NOW, this 11th day of March, 2025, the Order of the Workers' Compensation Appeal Board, dated April 5, 2024, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge