**FINDLAY TOWNSHIP and Inservco Insurance Services, Inc.,**
**Petitioners**

v.

**WORKERS' COMPENSATION APPEAL BOARD (PHILLIS),**
**Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 11, 2009.
Decided May 28, 2010.
Reargument Denied July 21, 2010.

Gary M. Scoulos, Pittsburgh, for petitioner, Findlay Township.

Daniel K. Bricmont, Pittsburgh, for respondent.

## OPINION

PER CURIAM.

Inservco Insurance Services, Inc., the third party administrator for Findlay Township's workers' compensation carrier, petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board). The Board affirmed the decision of the Workers' Compensation Judge (WCJ) to reinstate total disability compensation to David Phillis (Claimant) and to assess a penalty against Inservco for violating the Workers' Compensation Act.[1] The WCJ held that because Inservco made certain payments to Findlay Township during the time Claimant's workers' compensation benefits were suspended, Inserv-

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2708.

co thereby admitted liability for Claimant's disability compensation. Concluding that the facts, as found, do not support this conclusion, we reverse that part of the Board's adjudication that has been appealed by Employer.

Claimant was struck by a motor vehicle on February 1, 2003, while performing his duties as a police officer for Findlay Township. Inservco issued a Notice of Compensation Payable (NCP) describing Claimant's injuries as "multiple body contusions" and providing for payment of total disability benefits. Reproduced Record at 1a (R.R.____). Claimant returned to light-duty work on March 23, 2003, but left on May 29, 2003, to undergo shoulder surgery.[2] Claimant returned to light-duty work with no wage loss on July 8, 2003, at which time Inservco, after filing the appropriate notice with the Bureau of Workers' Compensation, suspended Claimant's benefits. Inservco's notice of suspension is the last workers' compensation document filed with the Bureau.

On August 3, 2003, Claimant resumed his pre-injury job duties as a police officer. He continued working regular-duty until October 18, 2003, when the Township's Police Chief, Paul Wilks, sent him for psychiatric treatment with James Huha, Ph.D. because he was exhibiting signs of depression. Over the next five months, Claimant worked intermittently, depending on Dr. Huha's recommendations. During this time, Claimant used his sick and vacation leave for the days he was not able to work due to his psychological condition. When

his leave expired the Township paid his salary for these missed days. Inservco did not compensate Claimant for the days he missed.[3] On March 26, 2004, Chief Wilks relieved Claimant of duty because of violent conduct related to his psychological condition. Because treatment did not resolve that condition, Claimant never returned to work.

After March 26, 2004, the Township continued to pay Claimant his regular salary, as it had done previously. The Township continued to pay Claimant until March 31, 2005, the effective date of a "Resignation Agreement" executed by the Township and Claimant. Under this agreement, the Township paid Claimant $9,741.23 in severance pay, and in exchange Claimant agreed to release the Township from any liability under what is commonly known as the Heart and Lung Act.[4] However, the Resignation Agreement provided that Claimant did not release the Township from its liability under the Workers' Compensation Act. Neither Inservco nor the workers' compensation carrier was a party to the Resignation Agreement.

Shortly before executing the Resignation Agreement, Claimant filed a petition to reinstate his workers' compensation benefits as of March 26, 2004, and a penalty petition. Claimant alleged that Inservco paid him workers' compensation benefits after March 26, 2004, but then unilaterally stopped paying in violation of the Act. Inservco filed answers, denying the allegations in both the reinstatement

2. There are no official workers' compensation documents explaining the payment of disability compensation to Claimant during March or May 2003. The lack of documentation does not affect our analysis.

3. After Claimant was dismissed, Inservco, in response to the Township's demands, did reimburse the Township for some of the salary

it paid Claimant for days missed between October 2003 and March 2004.

4. Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. §§ 637–638. Under the Heart and Lung Act, a police officer injured while performing his duties is entitled to receive his full salary from his employer during any period of disability caused by his injury. 53 P.S. § 637.

and penalty petitions. Claimant also filed a review petition seeking to add additional injuries to the NCP. Inservco did not oppose adding injuries to the right shoulder and left knee to the NCP; however, Inservco disputed Claimant's claim to have suffered a brain injury in the work-related automobile accident. Claimant also filed a petition to review medical treatment, seeking a determination that Dr. Huha's psychiatric treatment was related to the work injury. All petitions were heard in one proceeding before the WCJ.[5]

In defense of the reinstatement and penalty petitions, Inservco presented the deposition testimony of Karl Vogle, its senior claims examiner responsible for Claimant's workers' compensation claim. Vogle testified that in accordance with Inservco's Notification of Suspension, Claimant's benefits were suspended as of July 8, 2003. Vogle explained that on January 14, 2004, Chief Wilks informed him that Dr. Huha believed Claimant's mental problems stemmed from a possible head injury. Vogle issued a Notice of Compensation Denial on January 23, 2004, but he continued to investigate, sending Claimant for an independent medical examination (IME). On March 2, 2004, the IME physician informed Vogle that he believed Claimant was suffering from depression caused by the work incident. Accordingly, Inservco paid some of Claimant's medical expenses for this treatment.[6] However, in July 2004, the IME doctor reversed himself, opining that Claimant's depression was not work-related. Inservco never rescinded its January 23, 2004 Notice of Compensation Denial, even though it paid for some of Claimant's treatment for depression.

Vogle explained that when an employee is paid Heart and Lung benefits, Inservco sends checks to the municipal employer as reimbursement.[7] Vogle sent three checks to the Township as reimbursement for Claimant's purported Heart and Lung benefits: the first check was in the amount of $14,367.86, covering the period October 17, 2003, through March 14, 2004; the second check was in the amount of $1,287.08, covering the period March 15, 2004, through March 28, 2004; and the third check was in the amount of $22,371.43, covering the period March 29, 2004, through November 14, 2004. These checks were issued on May 28, 2004, and on November 19, 2004. Vogle also clarified that Inservco had nothing to do with the Township's decision to pay Claimant after he was dismissed or to call the salary payment Heart and Lung benefits.

Vogle acknowledged that the three Inservco checks came out of the "indemnity bucket" in the company's computer system. R.R. 231 a–232a. However, Claimant did not ask for reinstatement prior to

5. Because the issues on appeal concern only the reinstatement and penalty petitions, we will only discuss the evidence relevant to those petitions. Therefore, although the parties presented rather extensive medical evidence concerning the extent and cause of Claimant's emotional problems, we will not summarize it.

6. Although Claimant points this out in his brief, it is irrelevant because voluntary payment of medical expenses is not an admission of liability. See *Bellefonte Area School District v. Workmen's Compensation Appeal Board (Morgan)*, 156 Pa.Cmwlth.304, 627 A.2d 250,

254 (1993), *affirmed per curiam*, 545 Pa. 70, 680 A.2d 823 (1994) (encouraging employers to continue the practice of voluntarily paying medical bills "without fear of later penalty for those payments.").

7. This is proper procedure. When an employee is receiving Heart and Lung Benefits, payments made by the workers' compensation insurance carrier are turned over to the employer. *City of Erie v. Workers' Compensation Appeal Board (Annunziata)*, 575 Pa. 594, 604–605, 838 A.2d 598, 604 (2003).

their issuance, and Inservco did not file a document with the Bureau to revoke its July 8, 2003, suspension. Vogle got permission from Penn Prime, the workers' compensation carrier, to reimburse the Township for its payments through November 14, 2004, because of pressure from the Township. On November 15, 2004, however, Vogle issued a second Notice of Compensation Denial. Inservco ceased further reimbursement as of November 14, 2004.

Inservco presented testimony from Chief Wilks, who acknowledged that when Claimant returned to his regular job following his injury, his work performance was completely normal, and he believed Claimant had fully recovered. However, things changed in October 2003 when Claimant became the subject of an internal investigation for his alleged violation of the Department's rules of conduct. At the same time, Claimant was experiencing marital and financial difficulties. Claimant repeatedly told Chief Wilks that "everything is such a mess." R.R. 114a–115a. Claimant displayed signs of depression and became unable to function at work.[8]

As a result, on October 18, 2003, Chief Wilks relieved Claimant of duty and sent him to Dr. Huha for psychological evaluation in conjunction with the Township's wellness program. This program was established for the purpose of treating an employee's personal problems. While being treated by Dr. Huha, Claimant made several attempts to return to work. On March 14, 2004, Claimant returned to work half days. However, on March 26, 2004, Claimant fought with a coworker; punched a hole in the wall; and began hurling accusations at the Chief. This "out of control" behavior caused the Chief to relieve Claimant of duty for the final time. R.R. 133a.

After speaking with the Township Solicitor, Chief Wilks decided to continue to pay Claimant his full salary, because he did not want to run afoul of any laws or violate Claimant's civil rights. Chief Wilks advised Vogle on March 2, 2004, that Dr. Huha believed Claimant's psychological problems were work-related. Chief Wilks stated that he and Vogle had reached an understanding that Inservco would pay for treatment related to Claimant's depression. However, Chief Wilks acknowledged that Vogle never committed to have Inservco resume payment of disability benefits. In early November 2004, Chief Wilks became aware that Inservco had stopped reimbursing the Township, and he responded by threatening to sue. Inservco temporarily resumed the reimbursements until they ended on November 14, 2004.[9]

The WCJ added a right shoulder and left knee injury to the NCP by agreement of the parties. In every other respect, she denied Claimant's review petition, finding that Claimant's evidence did not prove that he sustained a brain injury in the automo-

---

8. Inservco also presented testimony from Claimant's supervisor, Officer John Hart. He confirmed Chief Wilks' testimony that Claimant began having problems at work in October 2003 because of his marital difficulties and the internal investigation.

9. Chief Wilks testified:

Q. Did Mr. Vogle indicate at that time that he had changed his mind?
A. Yes, he did.
Q. What did you say in response to that?

A. My reaction was extremely negative. I told him that we were never advised that they were ceasing to reimburse us for moneys that we were paying to [Claimant] and they can't do that.
Q. Did you threaten to sue Inservco?
A. Yes. I told Mr. Vogle that if he stood by that decision that I was going to recommend to our Board of Supervisors that we take legal action to get reimbursed.
R.R. 165a.

bile accident or that his psychological problems were caused by that accident. On the other hand, the WCJ granted Claimant's reinstatement petition as of March 27, 2004, reasoning as follows:

> No workers' compensation documents were ever generated after the July 8, 2003 suspension in spite of the fact that Inservco made significant payments to the [T]ownship to reimburse it for the payments the [T]ownship made to [C]laimant under the Heart & Lung Act. [K]arl Vogle, the adjuster for Inservco, confirmed that payments made by Inservco were for periods from March 14, 2004 through November 14, 2004. Although Mr. Vogle worked mightily to characterize that as something other than payment of indemnity benefits, he was unable to explain how anything could come out of the "indemnity bucket" other than workers' compensation indemnity benefits. [C]laimant's benefits simply stopped on November 15, 2004 although [C]laimant was not working, had not executed a supplemental agreement agreeing to a suspension of his benefits and no order of any sort from a workers' compensation judge had been obtained. Given an acknowledged February 1, 2003 work injury and payments made by Inservco for workers' compensation indemnity benefits ... a reinstatement of his benefits was required.

**10.** The Board's modification and reversal of certain portions of the WCJ's decision are not relevant in this appeal.

**11.** This Court's review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown)*, 830

WCJ decision, December 26, 2007, at 14; Finding of Fact 1. It followed, according to the WCJ, that Inservco was obligated to continue paying compensation benefits until it proved a right to their termination. The WCJ also awarded Claimant a twenty percent penalty, concluding that Inservco violated the Act by stopping benefits as of November 14, 2004, without following the appropriate procedures for doing so.

■ Both parties appealed to the Board, which reversed, modified and affirmed.[10] With respect to the reinstatement, the Board acknowledged Inservco's position that it made payments only to resolve a dispute with the Township. However, the Board affirmed the WCJ's determination that the payments to the Township were actually indemnity benefits under authority of *Kelly v. Workmen's Compensation Appeal Board (DePalma Roofing)*, 669 A.2d 1023 (Pa.Cmwlth.1995). The Board reasoned that because Inservco had made three payments to the Township, as reimbursement for the Township's salary payments to Claimant, Inservco was estopped from denying liability. Inservco then petitioned for this Court's review.[11]

Inservco presents four issues for our consideration.[12] First, Inservco argues that the Board erred in holding that Inservco's payments to the Township constituted payments of workers' compensation benefits. Second, Inservco asserts that the Board erred in concluding that the burden was on Inservco to prove entitle-

A.2d 649, 653 n. 2 (Pa.Cmwlth.2003). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Mrs. Smith's Frozen Foods Company v. Workmen's Compensation Appeal Board (Clouser)*, 114 Pa.Cmwlth.382, 539 A.2d 11, 14 (1988).

**12.** We have rearranged the order of the issues for organizational purposes.

ment to a suspension or termination of benefits. Third, Inservco argues that the Board erred in affirming the WCJ's imposition of penalties. Fourth, Inservco contends that the WCJ failed to issue a reasoned decision. We address these issues *seriatim.*

■ We begin with Inservco's argument that the Board erred in upholding the reinstatement of Claimant's benefits. It is well-established that an insurer may not stop paying workers' compensation benefits, absent a legally recognized event relieving it of its responsibility. *Robb, Leonard and Mulvihill v. Workers' Compensation Appeal Board (Hooper),* 746 A.2d 1175, 1182 (Pa.Cmwlth.2000). Such events include executing a supplemental agreement or final receipt; requesting and receiving a supersedeas; or receiving a decision from the workers' compensation authorities or a court suspending or terminating benefits. *Id.* Filing a notification of suspension pursuant to Section 413(c) of the Act is another way an insurer may legally suspend benefits. 77 P.S. § 774.2. If an insurer unilaterally stops paying benefits without following the prescribed statutory requirements, it commits

> a void act which [does] not affect the employee's right to receive compensation nor the [insurer's] ongoing obligation to pay benefits.

*Sheridan v. Workers' Compensation Appeal Board (Anzon, Inc.),* 713 A.2d 182, 186 (Pa.Cmwlth.1998). This is what the Board determined occurred in this case.

Inservco argues that the WCJ's factual finding that Inservco made indemnity payments is not supported by substantial evidence and that *Kelly,* 669 A.2d 1023, is distinguishable. In *Kelly,* the claimant was assaulted and seriously injured. The employer, suspecting that another employee had committed the assault, began paying the claimant's mortgage and paying his wife $300 a week. When the employer stopped these payments, the claimant filed a claim petition, which was granted. This Court held that the employer had effectively admitted liability under the Act because it made voluntary payments to the claimant and his wife *"with the intent to compensate Claimant for a work-related injury." Id.* at 1026 (emphasis added). We explained that when examining whether such payments constitute wages in lieu of compensation, it is "the *intent* of the payment, not the receipt thereof" that is relevant. *Id.* (emphasis in original).[13]

We agree with Inservco that the WCJ erred in reinstating benefits on the basis of one statement by Vogle that the payments came out of the "indemnity bucket" in Inservco's computer system. Inservco's internal system for processing checks may be one piece of evidence worthy of consideration, but it is not, in itself, dispositive. The WCJ must consider all the evidence relevant to the question of whether Inservco intended payments to the Township to be payments of compensation, and she did not.

The WCJ failed to consider, *inter alia,* Inservco's two Notices of Compensation Denial disputing the Township's theory that Claimant's psychological problems were caused by his work injury; the fact that Inservco did not compensate Claimant for the days he missed work prior to his final dismissal; the fact that the three payments Inservco did make occurred well after Claimant was relieved of duty and in response to demands and threats of litigation from the Township; or the fact that

---

13. Although Inservco argues that *Kelly* is inapplicable because it dealt with a claim petition, we see no reason why its rationale could not apply in a proceeding to reinstate benefits.

Inservco's payments were intermittent and in different amounts. By contrast, disability compensation is paid directly to a claimant, weekly or biweekly, and it is paid in the same fixed amount. *Cf. Kelly*, 669 A.2d at 1026. Most significant, the WCJ overlooked the fact that the Township alone made the decision to pay Claimant a salary after it dismissed him; decided to call this salary a Heart and Lung benefit without consulting Inservco; and then tried to shift further responsibility for Claimant's salary in the Resignation Agreement, to which Inservco was not a party.

The Board compounded the WCJ's error by misapplying *Kelly*. Unlike the situation in *Kelly*, Inservco did not make its payments to Claimant. Claimant's name was on the checks, but it is undisputed that the payments were made to the Township upon the Township's demand, not Claimant's demand. The Township, not Inservco, paid Claimant his full salary until he resigned effective March 31, 2005. Only then did Claimant attempt to resurrect his workers' compensation benefits or file a petition seeking to prove that his psychological problems were work-related.[14] Further, after Chief Wilks informed Vogle that Claimant's psychological prob-

lems were work-related, Inservco investigated and issued two notices of denial. There was no such denial of benefits in *Kelly*.

What is more, the Board, like the WCJ, did not consider the critical legal element, which was Inservco's *intent* in making those payments. All of the evidence shows that Inservco's intent in sending checks to the Township in 2004 was *not* to compensate Claimant for a work-related injury. Vogle and Chief Wilks both confirmed that Inservco issued the checks in the course of a dispute between Inservco and the Township that did not involve Claimant directly. This is why Inservco issued two separate Notices of Compensation Denial once it concluded that Claimant's psychological issues were not work-related.

In short, the record lacks substantial evidence to support a finding that Inservco admitted liability for compensation benefits beyond July 8, 2003. On the contrary, the record is devoid of any evidence to support a finding that Inservco ever intended to pay workers' compensation benefits to Claimant after he left work on March 26, 2004. Thus, the Board erred in affirming the reinstatement of Claimant's workers' compensation benefits.[15]

14. The only work injury Inservco ever acknowledged was a physical injury. It is axiomatic that a claimant seeking to add a psychological injury to the NCP must file a review petition and prove that the condition is work-related. *Commercial Credit Claims v. Workmen's Compensation Appeal Board (Lancaster)*, 556 Pa. 325, 333, 728 A.2d 902, 906 (1999).

15. We also agree with Inservco's observation that the Township's decision to pay Heart and Lung benefits is not binding on Inservco. In *Gunter v. Workers' Compensation Appeal Board (City of Philadelphia)*, 573 Pa. 386, 825 A.2d 1236 (2003), our Supreme Court held that the employer's payment of Injured on Duty (IOD) benefits to a police officer did not

estop the employer from challenging the officer's claim petition under the Act. The employer made a material mistake of fact in making IOD payments, but it had continued to investigate the legitimacy of the claim. The Court held that a "decision that would allow [the claimant] to convert undeserved IOD payments into a continuing entitlement to compensation benefits would be clearly erroneous." *Id.* at 399, 825 A.2d at 1244. Here, contrary to the Township's belief, it was established that Claimant's disability after October 18, 2003, was unrelated to his work injury. Further, Vogle continued to investigate after receiving the IME physician's first report which was corrected several months later.

■ Because Inservco never resumed paying workers' compensation disability benefits, it follows that Inservco is correct on its second issue, *i.e.,* that the WCJ erred in placing the burden of proof on Inservco to prove a basis for termination. Rather, it was Claimant who had the burden to show that once again, his earning power was adversely affected by his work injury. *Pieper v. Ametek–Thermox Instruments Division,* 526 Pa. 25, 34, 584 A.2d 301, 305 (1990). As the WCJ rejected Claimant's evidence that his mental problems were related to his work injury, Claimant failed to meet that burden.

■ Inservco next argues that the WCJ erred in granting Claimant's penalty petition. We agree. Under Section 413(b) of the Act, an insurer who unilaterally suspends, terminates or decreases payments of compensation shall be subject to a penalty. 77 P.S. § 774.1. Inservco legally suspended Claimant's benefits in July 2003. Because Inservco's payments to the Township in 2004 were not workers' compensa-tion, but payments made to prevent litigation with the Township, the termination of these payments was not governed by the Act. Accordingly, there can be no penalty imposed under Section 413(b) of the Act.[16]

Accordingly, we reverse the portion of the Board's order affirming the grant of Claimant's reinstatement and penalty petitions, and affirm in all other respects.

### ORDER

AND NOW, this 28th day of May, 2010, the order of the Workers' Compensation Appeal Board dated June 12, 2009, in the above captioned matter affirming the grant of Claimant's reinstatement and penalty petitions is hereby REVERSED. The order is AFFIRMED in all other respects.

---

**16.** Based on our disposition of the case, we need not address Inservco's reasoned decision argument.