IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Patrick Murray,                          :
                                         :
                    Petitioner           :
                                         :
          v.                             : No. 509 C.D. 2024
                                         : Submitted: March 4, 2025
City of Philadelphia                     :
(Workers' Compensation Appeal            :
Board),                                  :
                                         :
                    Respondent           :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE MATTHEW S. WOLF, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                   FILED: March 26, 2025


          Patrick Murray (Claimant) petitions for review from an April 5, 2024 decision and order of the Workers' Compensation Appeal Board (Board), affirming a decision and order of a Workers' Compensation Judge (WCJ). The WCJ's decision and order denied Claimant's petitions for reinstatement of workers' compensation benefits (Reinstatement Petition) and for penalties (Penalty Petition) (collectively, Petitions) against the City of Philadelphia (Employer or City) pursuant to the Workers' Compensation Act (Act).[1] For the reasons that follow, we affirm.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.1; 2501-2710.

## Background

Claimant is employed by Employer as a police officer. Claimant was diagnosed with COVID-19 (COVID) on November 7, 2020. On that day, he reported his diagnosis to his supervisor, Lieutenant Flaville. Claimant did not, however, tell his supervisor that he contracted the virus at work. About a month later, Claimant informed another supervisor, Sergeant Corbett, that he believed he contracted COVID due to work activities and exposures. Claimant remains unable to work because of his COVID symptoms. WCJ's Decision, Finding of Fact (F.F.) Nos. 3(d)-(e); 6(c). Claimant did not complete any paperwork alleging a work injury or illness and he received wage continuation benefits, referred to as "[E]-time." On January 5, 2022, Claimant received notice from Employer that his E-time pay designation would expire in 60 days. Since March 5, 2022, Claimant has been required to use his accrued sick leave. *Id.*, F.F. No. 3(e), 3(h).

Employer issued a Notice of Compensation Denial (NCD) on January 31, 2022. WCJ's Decision, F.F. No. 2. On March 2, 2022, Claimant filed the instant Petitions, alleging that Employer "unilaterally terminated benefits in January 2022 after accepting the claim for COVID with the payment of wages in lieu of benefits as a matter of law." Certified Record (C.R.) at Nos. 2, 3. The matter proceeded before the WCJ.

## Claimant's Evidence

Claimant testified on his own behalf via a deposition held on April 15, 2022.[2] Claimant related that he was 54 years old and had been a police officer for 28 years. He had achieved the rank of Detective and was assigned to the Special

---

[2] Claimant's deposition can be found in the Certified Record at No. 17.

Investigative Unit as a Crime Scene Detective. WCJ's Decision, F.F. No. 3(a)-(b). Claimant testified that following his diagnosis, he was hospitalized on November 13, 2020, for breathing problems. *Id.*, F.F. No. 3(f).

At the time of his testimony, Claimant's symptoms had not resolved. He had been referred to a pulmonologist for his breathing issues and was also seeing a cardiologist for heart and blood pressure-related issues. WCJ's Decision, F.F. No. 3(g).

Claimant also presented sworn testimony before the WCJ at hearings held on September 22, 2022, and December 15, 2022. At the September 22, 2022 hearing,[3] Claimant testified that his symptoms continued. He did not believe he was capable of performing his police officer duties. Furthermore, Claimant indicated that he had not returned to work in any capacity. WCJ's Decision, F.F. No. 4(a)-(c). At the December 15, 2022 hearing,[4] Claimant reiterated his inability to return to work and that he continued to use his accrued sick leave and vacation time. *Id.* at F.F. No. 6(c)-(d).[5]

**Employer's Evidence**

In its defense, Employer offered the August 15, 2022 deposition testimony of Barry Scott, its Deputy Finance Director for Risk Management (Risk Management) and its Risk Manager (Mr. Scott) and the August 25, 2022 deposition

---

[3] Claimant's September 22, 2022 testimony can be found in the Certified Record at No. 13.

[4] Claimant's December 15, 2022 testimony can be found in the Certified Record at No. 15.

[5] We note that Claimant's wife, Rhonda Murray, also testified before the WCJ. Because her testimony is not relevant to our disposition of this case, we need not discuss it further.

3

testimony of Lieutenant Donald Lowenthal, the Philadelphia Police Department's (Department) Infection Control Officer (Lieutenant Lowenthal).[6]

Mr. Scott testified that he has served in his position since 2003. Risk Management administers several different types of disability benefits to Department police officers, including workers' compensation, Heart and Lung benefits,[7] and benefits pursuant to Act 17.[8] When Department police officers believe they have sustained a work injury, they report the injury to their supervisor and the supervisor fills out a "COPA II" form.[9] From there, the supervisor and the Department's third-party administrator, PMA Management Corporation (PMA), investigate the alleged injury, and PMA determines if the claim is compensable. In turn, PMA notifies the employee whether their claim has been accepted or denied and what, if any, benefit they are to receive.

On March 23, 2020, following a stay-at-home order issued by Employer, Risk Management, along with other members of City government, began "addressing how to protect City workers from contracting COVID as well as ways to minimize the spread in the community as it impacted City operations." Deposition

---

[6] Mr. Scott's deposition can be found in the Certified Record at No. 20. Lieutenant Lowenthal's deposition can be found in the Certified Record at No. 21.

[7] The Heart and Lung Act, Act of June 28, 1935, P.L. 477, *as amended*. 53 P.S. §§637-638, provides public safety officers with their full salary while they recover from temporary, work-related ailments.

[8] Act of April 29, 2020, P.L. 118, No. 17, 35 Pa.C.S. §§57a01-02. Act 17 provides that a person who is eligible for Heart and Lung Act benefits who is temporarily incapacitated from performing his or her duties following a COVID diagnosis may receive up to 60 days of Heart and Lung Act benefits.

[9] "COPA II" is shorthand for "City of Philadelphia Accident, Injury, Illness Form." *See* Deposition of Barry Scott at 7.

4

of Barry Scott at 10. Mr. Scott related that in the early days of COVID, Risk Management did not have a written policy for police officers who believed that they contracted COVID at work. Furthermore, Mr. Scott testified, at no time throughout the pandemic was there a Risk Management written position that precluded police officers from making claims if they believed they contracted COVID at work.

With regard to E-time, Mr. Scott then explained that "E[-]time, or excused time, is a timekeeping tool that -- which enables an employee to continue to receive their salary when they can't or they're not at work for whatever reason." Deposition of Barry Scott at 12. To Mr. Scott's knowledge, employees on E-time historically continued to receive their regular salary and accrue benefits and did not deplete their personal leave time. From Risk Management's perspective, if a police officer received E-time because of COVID, it was not an acknowledgment that he or she had contracted COVID at work; rather

> [i]t was meant to signify that [Employer] was not trying to punish these officers and that it was -- so that they were not losing anything by being in this status, that this was, you know, a situation we were not expecting but we were looking to have a situation where, you know, folks who succumbed to this condition were not -- weren't financially penalized by the condition.

*Id.* at 13. Mr. Scott emphasized that E-time was not sick leave or personal time off but was a "sort of an administrative timekeeping category." *Id.* at 14. Mr. Scott confirmed that if a police officer filled out a COPA II form and the investigation determined that he or she did contract COVID at work, they would not be put on E-time but would be placed on a disability benefit under the employee disability program.

Mr. Scott testified that in January 2022, Employer became aware that several Department police officers who claimed disability due to long-haul COVID

were still out of work and receiving E-time. Employer decided to transition the officers from E-time to Act 17 benefits. Mr. Scott indicated that once their Act 17 benefits ceased, the officers would have to use their accrued sick time if they did not return to work. It was after this change that many of these officers filed for workers' compensation benefits although they had not previously sought disability benefits from Employer related to their COVID diagnoses.

On cross-examination, Mr. Scott acknowledged that he is not a Department employee and that Risk Management "provides direction to departments across the City in order to minimize the risk to City employees from hazards on the job[,]" but it does not have "a managerial authority to control the actions taken in a particular department." Deposition of Barry Scott at 21. Mr. Scott further acknowledged that in 2020 and 2021, Risk Management was not actively involved in contact tracing "which might have identified cases in the Department." *Id.* at 25. Finally, Mr. Scott indicated that he was never advised that Department supervisors were telling officers that they could only receive E-time for COVID and that COPA II forms were unnecessary.

For his part, Lieutenant Lowenthal testified that he had been serving as the Department's Infection Control Officer since 2007. He explained that prior to March 2020, he was involved in coordinating care and testing of police officers who had bodily fluid exposures. In March 2020, the nature of his position changed from handling bodily fluid exposures to "nothing but C[OVID]." Deposition of Lieutenant Donald Lowenthal at 10. Lieutenant Lowenthal became responsible for communication with Department officers who may have been infected with COVID. Lieutenant Lowenthal described various COVID policies implemented by Employer beginning in March 2020. While Lieutenant Lowenthal did not write the policies,

6

he did interpret them and answer questions. Lieutenant Lowenthal indicated that when asked by Department supervisors how to report an employee who was out with COVID on the Daily Activity Report, he indicated that the policies provided that those employees should be listed as being on E-time, regardless of whether the COVID was work-related or non-work-related. Further, he related that if a Department supervisor asked him whether they should fill out a COPA II form for an officer who claimed to have contracted COVID from work, he would advise the supervisor to do so. Lieutenant Lowenthal acknowledged that the first time a Department policy indicated that a COPA II form should be completed when an officer believed he or she contracted COVID at work was in July 2022.

### WCJ's Decision

Based on his review of the evidence, the WCJ denied Claimant's Petitions. In reaching this decision, the WCJ stated:

14. Having closely reviewed the testimony of [ ] Claimant along with all the evidence in this matter, this [WCJ] finds [ ] Claimant to be credible in most respects. In this regard, this [WCJ] finds the testimony of [ ] Claimant credible that he experienced [COVID-]type symptoms on or about November 7, 2020[,] and sought medical attention for the same. Further, this [WCJ] accepts the testimony of [ ] Claimant regarding the nature of his police duties and his interactions with fellow police office[r]s and the general public immediately preceding the onset of [his] symptoms. However, this [WCJ] rejects the testimony of [ ] Claimant to the extent he may have identified any specific source or cause(s) of his exposure to the [COVID] virus or any opinion that his symptoms were due to a work-related exposure to the virus[,] or any other medical opinions offered by [ ] Claimant. Further, this [WCJ] accepts the testimony of [ ] Claimant that he did not initially report to a supervisor that he believed he contracted COVID due to

7

work-related activities. However, this [WCJ] rejects the portion of his testimony to the extent he indicated he contracted the virus at work or was attempting to report a work-related injury or illness to a supervisor. Instead, this [WCJ] finds [ ] Claimant properly and professionally reported a serious and emerging health issue to a supervisor in an effort to protect the health and safety of other police officers and the general public. If [ ] Claimant was attempting to report his symptoms as a work-related injury or illness[,] his nearly three decades of service should have told him that he needed to complete some type of written or electronic injury report. Further [ ] Claimant had sustained prior work-related injuries and was aware of the policy to report and document the same. Given the unprecedented uncertainty and confusion during the initial stages of the outbreak of [COVID], it is understandable that both [ ] Claimant and [ ] Employer primarily focused their attention on retarding the spread of the virus rather than discussing how an individual may or may not have contracted the virus.

WCJ's Decision, F.F. No. 14. Further, regarding the testimonial evidence presented by Employer, the WCJ found the testimony of both Mr. Scott and Lieutenant Lowenthal to be credible. *Id.*, F.F. Nos. 15-16.

The WCJ emphasized that he faced a "narrow legal issue" of whether Employer's issuance of E-time payments to Claimant for an approximate two-year period constituted "wages in lieu of compensation" such that Employer was estopped from disavowing its acceptance to pay compensation "with the same legal effect as would apply if [it] had formally complied with the Act and the applicable Rules and Regulations . . . ." WCJ's Decision, F.F. No. 18 (quoting *Mosgo v. Workmens' Compensation Appeal Board (Tri-Area Beverage, Inc.)*, 480 A.2d 1285, 1288 (Pa. Cmwlth. 1984)). The WCJ found the case of *Findlay Township v. Workers' Compensation Appeal Board (Phillis)*, 996 A.2d 1111 (Pa. Cmwlth. 2010) to be "the most instructive." *Id.*, F.F. No. 19. The decision in *Findlay* indicated that

8

the critical legal element when analyzing the nature of payments made by an employer to an employee is the intent in making the payments. Similar to the employer in *Findlay*, the WCJ determined that Employer in this case "did not *intend* to pay workers' compensation benefits to [ ] Claimant simply because [he] (or any other employee) reported experiencing COVID[-]type symptoms in March 2020."[10] *Id.* (emphasis in original). Highlighting Mr. Scott's credible testimony, the WCJ emphasized that E-time "simply means excused time and it is used as an administrative timekeeping tool which enables an employee to continue to receive their salary when they are not working for any reason." *Id.* Importantly, Mr. Scott explained that the payment of E-time was not an acknowledgment that a police officer contracted COVID at work. The WCJ found:

> It is evident from the record that E-time was offered to all employees of [ ] Employer, not just police officers, without consideration of where exposure to the virus occurred. Further, it is evident that [ ] Claimant could have (and was not actively discouraged nor prevented from) filing [sic] for [Injured on Duty] benefits . . . . In summary, this [WCJ] finds [ ] Employer's use of its "E-time" payroll designation in this case did not constitute the payment of wages in lieu of workers' compensation benefits . . . .

*Id.*

As to Claimant's Penalty Petition, the WCJ reasoned that because he found that Employer demonstrated that it never intended its use of E-time to result in acceptance of workers' compensation benefits, Employer's subsequent discontinuation of E-time was not intended to be a unilateral discontinuation of

---

[10] The reference to March 2020 appears to be a typographical error as Claimant was diagnosed with COVID in November of 2020.

9

workers' compensation benefits. WCJ's Decision, F.F. No. 21. Thus, the WCJ reasoned, Claimant failed to demonstrate that Employer violated the Act.

Claimant appealed and the Board affirmed. Claimant now appeals to this Court.[11]

## DISCUSSION

On appeal, Claimant argues that the E-time payments he received were made in lieu of compensation for his work-related COVID, that Employer's payment of E-time was an admission of liability, and that Employer's payment of E-time benefits estopped it from denying liability under the Act. Claimant further argues that the WCJ erred in denying his Penalty Petition because Employer accepted liability for a work-related injury, and Employer violated the Act by unilaterally terminating payments for his work-related injury. In the recent case of *Brown v. City of Philadelphia (Workers' Compensation Appeal Board)*, 330 A.3d 12 (Pa. Cmwlth. 2025), this Court performed an exhaustive analysis of the identical issues raised here, and issued a well-reasoned opinion affirming the Board. *See also Clarke v. City of Philadelphia (Workers' Compensation Appeal Board)* (Pa. Cmwlth., No. 508 C.D. 2024, filed January 17, 2025); *Tymes v. City of Philadelphia (Workers' Compensation Appeal Board)* (Pa. Cmwlth., No. 464 C.D. 2024, filed January 29,

---

[11] This Court's review is limited to determining whether the WCJ's findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *DiLaqua v. City of Philadelphia Fire Department (Workers' Compensation Appeal Board)*, 268 A.3d 1, 4 n.5 (Pa. Cmwlth. 2021). "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Waldameer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003).

10

2025).[12]  For the reasons set forth in *Brown, Clarke*, and *Tymes*, we conclude there was no error of law or abuse of discretion in denying Claimant's Petitions.

Accordingly, the order of the Board is affirmed.

_____
MICHAEL H. WOJCIK, Judge

Judge Dumas did not participate in the decision of this case.

---

[12] Unreported memorandum opinions of this Court filed after January 15, 2008, may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b), and Section 414(a) of the Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Patrick Murray,            :
                                  :
           Petitioner    :
                                  :
           v.                :   No. 509 C.D. 2024
                                  :   Submitted: March 4, 2025
City of Philadelphia        :
(Workers' Compensation Appeal    :
Board),                   :
                                  :
           Respondent   :

## O R D E R

AND NOW, this 26th day of March, 2025, the April 5, 2024 order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge