IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tyra Deveaux,                               :
                                            :
                        Petitioner          :
                                            :
            v.                              : No. 531 C.D. 2024
                                            : Submitted: March 4, 2025
City of Philadelphia                        :
(Workers' Compensation                      :
Appeal Board),                              :
                                            :
                        Respondent          :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE MATTHEW S. WOLF, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED: March 28, 2025


        Tyra Deveaux (Claimant) petitions for review from an April 5, 2024 decision and order of the Workers' Compensation Appeal Board (Board), affirming a decision and order of a Workers' Compensation Judge (WCJ). The WCJ's decision and order denied Claimant's petitions for reinstatement of workers' compensation benefits (Reinstatement Petition) and for penalties (Penalty Petition) (collectively, Petitions) against the City of Philadelphia (Employer or City) pursuant to the Workers' Compensation Act (Act).[1] For the reasons that follow, we affirm.

_____

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.1; 2501-2710.

## Background

Claimant is employed by Employer as a police officer. Claimant was diagnosed with COVID-19 (COVID) on March 25, 2020. On that day, she reported her diagnosis to her supervisor, Sergeant James Schuck. Claimant told Sergeant Schuck that she believed she contracted COVID at work. Claimant's last shift was on March 16, 2020, and she has not returned to work since her diagnosis. WCJ's Decision, Finding of Fact (F.F.) No. 4(a), (e)-(f). Claimant was paid wage continuation benefits, referred to as "E-time." *Id.*, F.F. No. 4(h). Claimant stopped receiving E-time in March of 2022 and began using her accrued sick leave. *Id.*

Employer issued a Notice of Compensation Denial (NCD) on January 31, 2022. WCJ's Decision, F.F. No. 2. On April 4, 2022, Claimant filed the instant Petitions, alleging that her benefits were "unilaterally stopped after receiving wage[s] in lieu of [workers' compensation benefits] from 03/28/2020 to 03/05/2022." Certified Record (C.R.) at Nos. 2, 3. The matter proceeded before the WCJ.

## Claimant's Evidence

Claimant testified on her own behalf via a deposition held on August 24, 2022.[2] Claimant related that she was 51 years old and had been a police officer for 27 years. At the time of the COVID outbreak, she worked in the Narcotics Field Unit. WCJ's Decision, F.F. No. 4(a)-(b).

At the time of her testimony, Claimant's condition had improved since she stopped working; however, she continued to suffer from headaches, fatigue,

---

[2] Claimant's deposition can be found in the Certified Record at No. 17.

anxiety, and depression.  WCJ's Decision, F.F. No. 4(i).  Claimant did not believe that she could return to her pre-injury job as a police officer.  *Id.*, F.F. No. 4(j).

## Employer's Evidence

In its defense, Employer offered the August 15, 2022 deposition testimony of Barry Scott, its Deputy Finance Director for Risk Management (Risk Management) and its Risk Manager (Mr. Scott) and the August 25, 2022 deposition testimony of Lieutenant Donald Lowenthal, the Philadelphia Police Department's (Department) Infection Control Officer (Lieutenant Lowenthal).[3]

Mr. Scott testified that he has served in his position since 2003.  Risk Management administers several different types of disability benefits to Department police officers, including workers' compensation, Heart and Lung benefits,[4] and benefits pursuant to Act 17.[5]  When Department police officers believe they have sustained a work injury, they report the injury to their supervisor and the supervisor fills out a "COPA II" form.[6]  From there, the supervisor and the Department's third-party administrator, PMA Management Corporation (PMA), investigate the alleged

---

[3] Mr. Scott's deposition can be found in the Certified Record at No. 20.  Lieutenant Lowenthal's deposition can be found in the Certified Record at No. 21.

[4] The Heart and Lung Act, Act of June 28, 1935, P.L. 477, *as amended*. 53 P.S. §§637-638, provides public safety officers with their full salary while they recover from temporary, work-related ailments.

[5] Act of April 29, 2020, P.L. 118, No. 17, 35 Pa.C.S. §§57a01-02.  Act 17 provides that a person who is eligible for Heart and Lung Act benefits who is temporarily incapacitated from performing his or her duties following a COVID diagnosis may receive up to 60 days of Heart and Lung Act benefits.

[6] "COPA II" is shorthand for "City of Philadelphia Accident, Injury, Illness Form."  *See* Deposition of Barry Scott at 7.

3

injury, and PMA determines if the claim is compensable. In turn, PMA notifies the employee whether their claim has been accepted or denied and what, if any, benefit they are to receive.

On March 23, 2020, following a stay-at-home order issued by the Employer, Risk Management, along with other members of City government, began "addressing how to protect City workers from contracting COVID as well as ways to minimize the spread in the community as it impacted City operations." Deposition of Barry Scott at 10. Mr. Scott related that in the early days of COVID, Risk Management did not have a written policy for police officers who believed that they contracted COVID at work. Furthermore, Mr. Scott testified, at no time throughout the pandemic was there a Risk Management written position that precluded police officers from making claims if they believed they contracted COVID at work.

With regard to E-time, Mr. Scott then explained that "E[-]time, or excused time, is a timekeeping tool that -- which enables an employee to continue to receive their salary when they can't or they're not at work for whatever reason." Deposition of Barry Scott at 12. To Mr. Scott's knowledge, employees on E-time historically continued to receive their regular salary and accrue benefits and did not deplete their personal leave time. From Risk Management's perspective, if a police officer received E-time because of COVID, it was not an acknowledgment that he or she had contracted COVID at work; rather

> [i]t was meant to signify that [Employer] was not trying to punish these officers and that it was -- so that they were not losing anything by being in this status, that this was, you know, a situation we were not expecting but we were looking to have a situation where, you know, folks who succumbed to this condition were not -- weren't financially penalized by the condition.

4

*Id.* at 13. Mr. Scott emphasized that E-time was not sick leave or personal time off but was a "sort of an administrative timekeeping category." *Id.* at 14. Mr. Scott confirmed that if a police officer filled out a COPA II form and the investigation determined that he or she did contract COVID at work, they would not be put on E-time but would be placed on a disability benefit under the employee disability program.

Mr. Scott testified that in January 2022, Employer became aware that several Department police officers who claimed disability due to long-haul COVID were still out of work and receiving E-time. Employer decided to transition the officers from E-time to Act 17 benefits. Mr. Scott indicated that once their Act 17 benefits ceased, the officers would have to use their accrued sick time if they did not return to work. It was after this change that many of these officers filed for workers' compensation benefits although they had not previously sought disability benefits from Employer related to their COVID diagnoses.

On cross-examination, Mr. Scott acknowledged that he is not a Department employee and that Risk Management "provides direction to departments across the City in order to minimize the risk to City employees from hazards on the job[,]" but it does not have "a managerial authority to control the actions taken in a particular department." Deposition of Barry Scott at 21. Mr. Scott further acknowledged that in 2020 and 2021, Risk Management was not actively involved in contact tracing "which might have identified cases in the Department." *Id.* at 25. Finally, Mr. Scott indicated that he was never advised that Department supervisors were telling officers that they could only receive E-time for COVID and that COPA II forms were unnecessary.

5

For his part, Lieutenant Lowenthal testified that he had been serving as the Department's Infection Control Officer since 2007. He explained that prior to March 2020, he was involved in coordinating care and testing of police officers who had bodily fluid exposures. In March 2020 the nature of his position changed from handling bodily fluid exposures to "nothing but C[OVID]." Deposition of Lieutenant Donald Lowenthal at 10. Lieutenant Lowenthal became responsible for communication with Department officers who may have been infected with COVID. Lieutenant Lowenthal described various COVID policies implemented by Employer beginning in March 2020. While Lieutenant Lowenthal did not write the policies, he did interpret them and answer questions. Lieutenant Lowenthal indicated that when asked by Department supervisors how to report an employee who was out with COVID on the Daily Activity Report, he indicated that the policies provided that those employees should be listed as being on E-time, regardless of whether the COVID was work related or non-work-related. Further, he related that if a Department supervisor asked him whether they should fill out a COPA II form for an officer who claimed to have contracted COVID from work, he would advise the supervisor to do so. Lieutenant Lowenthal acknowledged that the first time a Department policy indicated that a COPA II form should be completed when an officer believed he or she contracted COVID at work was in July 2022.

**WCJ's Decision**

Based on his review of the evidence, the WCJ denied Claimant's Petitions. In reaching this decision, the WCJ stated:

> 10. Having closely reviewed the testimony of [ ] Claimant along with all the evidence in this matter, this [WCJ] finds [ ] Claimant to be credible in most respects. In this regard,

6

this [WCJ] finds the testimony of [ ] Claimant credible that she experienced [COVID-]type symptoms on or about March 25, 2020[,] and sought medical attention for the same. Further, this [WCJ] accepts the testimony of [ ] Claimant regarding the nature of her police duties and her interactions with fellow police office[r]s and the general public immediately preceding the onset of her symptoms. However, this [WCJ] rejects the testimony of [ ] Claimant to the extent she may have identified any specific source or cause(s) of her exposure to the [COVID] virus or any opinion that her symptoms were due to a work-related exposure to the virus[,] or any other medical opinions offered by [ ] Claimant. Further, this [WCJ] accepts the testimony of [ ] Claimant that she promptly reported her COVID symptoms to her supervisor, Sergeant Schuck. However, this [WCJ] rejects the portion of her testimony to the extent she indicated she contracted the virus at work or was attempting to report a work-related injury or illness to her supervisor. Instead, this [WCJ] finds [ ] Claimant properly and professionally reported a serious and emerging health issue to her supervisor in an effort to protect the health and safety of other police officers and the general public. If [ ] Claimant was attempting to report her symptoms as a work-related injury or illness[,] her nearly two decades of service should have told her that she needed to complete some type of written or electronic injury report. Given the unprecedented uncertainty and confusion during the initial stages of the outbreak of [COVID], it is understandable that both [ ] Claimant and [ ] Employer primarily focused their attention on retarding the spread of the virus rather than discussing how an individual may or may not have contracted the virus.

WCJ's Decision, F.F. No. 10. Further, regarding the testimonial evidence presented by Employer, the WCJ found the testimony of both Mr. Scott and Lieutenant Lowenthal to be credible. *Id.*, F.F. Nos. 11-12.

The WCJ emphasized that he faced a "narrow legal issue" of whether Employer's issuance of E-time payments to Claimant for an approximate two-year period constituted "wages in lieu of compensation" such that Employer was

estopped from disavowing its acceptance to pay compensation "with the same legal effect as would apply if [it] had formally complied with the Act and the applicable Rules and Regulations . . . ." WCJ's Decision, F.F. No. 14 (quoting *Mosgo v. Workmens' Compensation Appeal Board (Tri-Area Beverage, Inc.)*, 480 A.2d 1285, 1288 (Pa. Cmwlth. 1984)). The WCJ found the case of *Findlay Township v. Workers' Compensation Appeal Board (Phillis)*, 996 A.2d 1111 (Pa. Cmwlth. 2010) to be "the most instructive[.]" *Id.*, F.F. No. 15. The decision in *Findlay* indicated that the critical legal element when analyzing the nature of payments made by an employer to an employee is the intent in making the payments. Similar to the employer in *Findlay*, the WCJ determined that Employer in this case "did not *intend* to pay workers' compensation benefits to [ ] Claimant simply because she (or any other employee) reported experiencing COVID[-]type symptoms in March 2020." *Id.* (emphasis in original). Highlighting Mr. Scott's credible testimony, the WCJ emphasized that E-time "simply means excused time and it is used as an administrative timekeeping tool which enables an employee to continue to receive their salary when they are not working for any reason." *Id.* Importantly, Mr. Scott explained that the payment of E-time was not an acknowledgment that a police officer contracted COVID at work. The WCJ found:

> It is evident from the record that E-time was offered to all employees of [] Employer, not just police officers, without consideration of where exposure to the virus occurred. Further, it is evident that [ ] Claimant could have (and was not actively discouraged nor prevented from) filing [sic] for [Injured on Duty] benefits . . . . In summary, this [WCJ] finds [ ] Employer's use of its "E-time" payroll designation in this case did not constitute the payment of wages in lieu of workers' compensation benefits . . . .

*Id.*

8

As to Claimant's Penalty Petition, the WCJ reasoned that because he found that Employer demonstrated that it never intended its use of E-time to result in acceptance of workers' compensation benefits, Employer's subsequent discontinuation of E-time was not intended to be a unilateral discontinuation of workers' compensation benefits. WCJ's Decision, F.F. No. 21. Thus, the WCJ reasoned, Claimant failed to demonstrate that Employer violated the Act.

Claimant appealed and the Board affirmed. Claimant now appeals to this Court.[7]

## DISCUSSION

On appeal, Claimant argues that the E-time payments she received were made in lieu of compensation for her work-related COVID, that Employer's payment of E-time was an admission of liability, and that Employer's payment of E-time benefits estopped it from denying liability under the Act. Claimant further argues that the WCJ erred in denying her Penalty Petition because Employer accepted liability for a work-related injury, and Employer violated the Act by unilaterally terminating payments for her work-related injury. In the recent case of *Brown v. City of Philadelphia (Workers' Compensation Appeal Board)*, 330 A.3d 12 (Pa. Cmwlth. 2025), this Court performed an exhaustive analysis of the identical issues raised here, and issued a well-reasoned opinion affirming the Board. *See also Clarke v. City of Philadelphia (Workers' Compensation Appeal Board)* (Pa.

---

[7] This Court's review is limited to determining whether the WCJ's findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *DiLaqua v. City of Philadelphia Fire Department (Workers' Compensation Appeal Board)*, 268 A.3d 1, 4 n.5 (Pa. Cmwlth. 2021). "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Waldameer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003).

9

Cmwlth., No. 508 C.D. 2024, filed January 17, 2025); *Tymes v. City of Philadelphia (Workers' Compensation Appeal Board)* (Pa. Cmwlth., No. 464 C.D. 2024, filed January 29, 2025).[8]  For the reasons set forth in *Brown, Clarke*, and *Tymes*, we conclude there was no error of law or abuse of discretion in denying Claimant's Petitions.

        Accordingly, the order of the Board is affirmed.

_____
MICHAEL H. WOJCIK, Judge

Judge Dumas did not participate in the decision of this case.

---

[8] Unreported memorandum opinions of this Court filed after January 15, 2008, may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b), and Section 414(a) of the Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tyra Deveaux,                 :
                                       :
           Petitioner     :
                                         :
          v.                      : No. 531 C.D. 2024
                                         :
City of Philadelphia        :
(Workers' Compensation    :
Appeal Board),           :
                                         :
          Respondent   :

O R D E R

AND NOW, this 28th day of March, 2025, the April 5, 2024 order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge